T.C. Summary Opinion 2006-176


UNITED STATES TAX COURT


PATRICK M. SHANNON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9574-05S.                    Filed October 25, 2006.


Patrick M. Shannon, pro se.

<u>Lisa K. Hunter</u>, for respondent.


CHIECHI, <u>Judge</u>:  This case is before the Court on respondent's motion for summary judgment (respondent's motion)[1] and was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time that the petition was filed.[2]

---

[1]Although the Court ordered petitioner to file a response to respondent's motion, petitioner failed to do so.

[2]All section references are to the Internal Revenue Code in
                                        (continued...)

The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority. We shall grant respondent's motion.

## Background

The record establishes and/or the parties do not dispute the following.

Petitioner resided in Bellevue, Nebraska, at the time he filed the petition in this case.

Petitioner did not timely file a Federal income tax (tax) return (return) for his taxable year 1999. On or about April 25, 2002, respondent prepared a substitute for return for that year.

On September 5, 2002, respondent issued to petitioner a notice of deficiency with respect to his taxable year 1999 (1999 notice of deficiency), which he received. In that notice, respondent determined a deficiency in, and additions under sections 6651(a)(1), 6651(a)(2), and 6654 to, petitioner's tax for that year in the respective amounts of $7,691, $1,036.57, $598.91,[3] and $204.74.

_____

[2](...continued)
effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

[3]With respect to the addition to tax under sec. 6651(a)(2), respondent determined in the 1999 notice of deficiency that if petitioner "did not pay the balance of the tax owed within the time prescribed by law, a penalty of 0.5% of the tax due is added for each month the tax remains unpaid (not to exceed a total of 25% of the unpaid amount".

Petitioner did not file a petition in the Court with respect to the 1999 notice of deficiency.

On February 24, 2003, respondent (1) assessed with respect to petitioner's taxable year 1999 the tax of $7,691 and additions to tax under sections 6651(a)(1), 6651(a)(2), and 6654 of $1,036.57, $806.22,[4] and $204.74, respectively, that respondent determined in the 1999 notice of deficiency, as well as interest as provided by law on such assessed amounts, and (2) abated certain of such assessed amounts. (We shall refer to any such unpaid assessed amounts, as well as interest as provided by law accrued after February 24, 2003, as petitioner's unpaid 1999 notice of deficiency liability.)

On February 24, 2003, respondent issued to petitioner a notice of balance due with respect to petitioner's unpaid 1999 notice of deficiency liability.

Around March 18, 2003, petitioner's return preparer sent respondent Form 1040, U.S. Individual Income Tax Return, for petitioner and his spouse Lauri Shannon (Ms. Shannon) for their taxable year 1999 (1999 return) that petitioner and Ms. Shannon had signed. Respondent filed that return sometime shortly after respondent received it. In their 1999 return, petitioner and Ms. Shannon reported total tax of $29,069 and tax due of $24,014. When petitioner's return preparer sent respondent the 1999 return

---

[4]See supra note 3.

around March 18, 2003, petitioner and Ms. Shannon did not pay the tax shown due in that return.

On May 5, 2003, respondent assessed with respect to the taxable year 1999 of petitioner and Ms. Shannon (1) tax of $21,378 ($21,378 increase in 1999 tax), which was the difference between the total tax (i.e., $29,069) that petitioner and Ms. Shannon reported in their 1999 return and the amount of tax (i.e., $7,691) that respondent determined in the 1999 notice of deficiency and assessed on February 24, 2003, with respect to petitioner's taxable year 1999 and (2) additions to tax under section 6651(a)(1) and (2) of $4,351.06 and $3,743.33, respectively, attributable to the $21,378 increase in 1999 tax (increases in the 1999 additions to tax), as well as interest as provided by law on such assessed amounts. (We shall refer to any such unpaid assessed amounts, as well as interest as provided by law accrued after May 5, 2003, as petitioner's[5] unpaid 1999 return liability. We shall refer collectively to petitioner's unpaid 1999 notice of deficiency liability and petitioner's unpaid 1999 return liability, as well as interest as provided by law accrued after February 24, 2003, and May 5, 2003, respectively, as petitioner's unpaid total 1999 liability.)

---

[5]This case involves only petitioner, and not Ms. Shannon. For convenience, we shall sometimes refer only to petitioner, and not to petitioner and Ms. Shannon.

On May 5, 2003, respondent issued to petitioner a notice of balance due with respect to petitioner's unpaid 1999 return liability.

On various dates from May 26 through December 22, 2003, respondent abated certain assessed amounts of petitioner's tax, additions to tax, and interest as provided by law with respect to petitioner's taxable year 1999. On various dates after respondent made the respective assessments on February 24, 2003, and May 5, 2003, with respect to petitioner's taxable year 1999, respondent applied as credits to the unpaid total 1999 liability certain overpayments with respect to certain other taxable years of petitioner after petitioner's taxable year 1999.

On February 21, 2004, respondent issued to petitioner a final notice of intent to levy and notice of your right to a hearing with respect to petitioner's unpaid total 1999 liability.

On or about March 8, 2004, petitioner sent a letter (petitioner's March 8, 2004 letter) to respondent that respondent received on March 12, 2004. That letter stated in pertinent part:

**Letter of Protest**

\*      \*      \*      \*      \*      \*      \*

2.    I state that I want to **APPEAL** the IRS finding to the Appeal Office.

3.     See copy of your letter attached.[6]

4.     Tax years involved are 1999, 2000, 2001, 2002 and 2003.

5.     I do not agree with your conclusion that we owe any money to you.  We did not owe when we filed our 1999 return.  **You owe us** a refund for 2000, 2001, 2002, and 2003.  Not to mention the $600.00 refund that we never received.  Amount owed us is approximately **$20,000.00!!!!!**  Plus interest for four (4) years * * * [Reproduced literally.]

On or about September 15, 2004, an Appeals officer with respondent's Appeals Office (Appeals officer) sent petitioner a letter.  That letter stated in pertinent part:

> **In review of your protest and/or request for a hearing,** I find that the outstanding liabilities are from your own late filing of the 1999 return.  The first liability was established by the Service with some limited information after you defaulted your right to petition the Tax Court.  Thereafter, you submitted a return for 1999 with a higher liability.
>
> Since the due date of the return was April 15, 2000, you were assessed the failure to file penalty, the failure to pay penalty and interest.  As the Service took funds from other returns, adjustments were made to the penalties and interest since some of the payments from other returns were not known until after the penalties and interest were assessed, but the effective date of the refunds took effect earlier.
>
> * * * The total assessed balance is currently $18,309.15 since the Service took $2,236.51 levy funds on May 17, 2004.
>
>    *      *      *      *      *      *      *

---

[6]Petitioner attached to his March 8, 2004 letter Form CP 504, "**Urgent!!  We intend to levy on certain assets.  Please respond NOW.**" (Form CP 504).  The Internal Revenue Service (IRS) had issued Form CP 504 to him with respect to petitioner's unpaid total 1999 liability.

I ask that you respond within the next 30 days to discuss the case, or set a time and date to discuss the case * * *. [Reproduced literally.]

On November 16, 2004, the Appeals officer held a telephonic hearing with petitioner's authorized representative. By letter dated November 16, 2004, the Appeals officer sent petitioner's authorized representative a copy of a transcript of the IRS's account with respect to petitioner's taxable year 1999.

On or about December 30, 2004, petitioner's authorized representative sent the Appeals officer a letter (petitioner's December 30, 2004 letter). That letter stated in pertinent part:

We are asking for abatement of penalties for this case due to reasonable cause, based upon consideration of the following facts.

The main penalty that has been applied is the failure to file penalty under Section 6651(a)(1). The original return was filed by the October 15, 2000 extended due date. However, the return was not signed by the taxpayer. It is our understanding that the IRS has had a longstanding policy of waiving this penalty if the error is corrected. In this case the error was indeed corrected when the taxpayer was notified of this oversight. Thus, we request that this penalty be abated, as the taxpayer moved to correct this error as quick as possible once it was discovered.

Further, please note that the taxpayer suffered a relapse of his hydrocephalus during 1999 and spent most of the last four months of 1999 hospitalized during which time he underwent multiple brain surgeries and had a shunt placed in his brain to reduce fluid pressure. This condition rendered the taxpayer very much like an Alzheimer's patient, unable to remember or care for himself and very much at the mercy of the former CPA's direction in this matter.

The other penalty charged in this case is the failure to pay penalty under Section 6651(a)(2). As a first

consideration for abatement of the penalty, the tax-payer, prior to the tax year in question, had a good record of timely filing and paying his tax liabilities, and the underpayment in this case was not due to bad faith. In addition, the taxpayer exercised prudence by engaging a CPA to advise him on his personal and business tax matters. The taxpayer relied on the advice of his former CPA, who gave assurance that application of subsequent taxable years' tax overpayments to the taxpayer's 1999 underpayment would result in elimination of his tax liability for 1999. While this advice was clearly erroneous, the taxpayer had no way of knowing this fact and was in no condition to challenge this advice. Had the taxpayer been correctly advised by his CPA, he would have taken the correct action, and request that this be considered in your review of the application of the failure to pay penalty.

We are also asking for reduction of interest and/or abatement in this case based upon consideration of the following facts.

The majority of the payments made in this case were by way of payroll deductions from the taxpayer and were not applied to the tax in some cases until some sixteen months after the government received the money. For example, monies deducted from the taxpayers' January 2000 paychecks were not applied to the taxes due until Apr 15, 2001 when the taxes for 2000 were due. Applying 1/12 of the refund due for tax year 2000 evenly throughout 2000 as payments against the taxes due would significantly reduce the interest charge in this case and more fairly represent the actual amount that should be owed.

In addition interest in this case is eligible for abatement because the delayed payments were not due solely to the actions of the taxpayer, but were caused by erroneous advice from a former CPA. [Reproduced literally.]

On March 8, 2005, the Appeals officer held another telephonic hearing with petitioner's authorized representative with respect to the issues that that representative had raised in petitioner's December 30, 2004 letter.

On or about March 21, 2005, petitioner's authorized representative sent the Appeals officer another letter (petitioner's March 21, 2005 letter). That letter stated in pertinent part:

We are writing on behalf of * * * [petitioner] regarding the outstanding 1999 balance * * *.

We previously corresponded with you on this issue in a letter dated December 30, 2004 in which we laid out specific points for abatement of the penalties. We also submitted additional information on the medical problems suffered by the taxpayer on January 29, 2005 as requested. We are requesting a written response to each of these points, since they have summarily been rejected.

We are also asking for written response to our calculation of the amounts due, based on the calculations we submitted along with the aforementioned correspondence of December 30, 2004.

Further, we would like a written determination of the amount due for 1999.

The taxpayer is not proposing an offer in compromise at this time, and therefore is not submitting Form 433-A.

On or about March 25, 2005, in response to petitioner's March 21, 2005 letter, the Appeals officer sent petitioner's authorized representative a letter. That letter stated in pertinent part:

In response to your latest correspondence and fax, I am writing this letter.

You did submit arguments about the penalties for 1999 and submitted evidence of the taxpayer's medical condition since 1999. There have been other arguments about the computations of the balance due. I reviewed the file and find insufficient evidence overcomes the penalties. The computations of the balances due have been found to be correct. I found one exception in that a levy was taken during the period of collection

due process and have ordered that refunded. The current transcript shows this has been done recently.

There is no evidence that the taxpayer timely filed a return for 1999, with or with a signature. The first return or copy of a return is the one signed May 31, 2001. The recorded extension date expired on August 15, 2000. The Service set up a substitute for a return in May of 2002. The Service started sending reports of the 1999 liability in May of 2002. Where there was no agreement, a Statutory Notice of deficiency was issued September 5, 2002. The tax, penalty and interest were assessed on February 24, 2002 when the taxpayer didn't petition the Tax Court. **The taxpayer had his opportunity to argue the tax, failure to file penalty, failure to pay penalty and failure to pay estimated tax penalty in Tax Court.**

After the assessment from the statutory notice, the taxpayer submitted his return with a larger liability. The account was adjusted to larger amounts on May 5, 2003. It appears the Service received the return earlier, approximately February of 2003, but the return didn't have an original signature. Later this was rectified and the return was posted so the account could be posted.

There is no long standing policy for the Service to waive the failure to file penalty when the taxpayer doesn't submit a timely return. There is no evidence it was ever timely filed, signed or unsigned.

Regarding the failure to pay penalty, it is the taxpayer's responsibility to ensure the tax liability it paid on time. He cannot delegate that responsibility to a CPA or others. The return submitted in 2003 showed a larger liability than the Service set up earlier. While you and the taxpayer contend the return was filed in 2000 and the return has a copy of a signature in May of 2001, there were no payments towards the liability except for some withholding that is questionable.

**I saw no evidence of reasonable cause to abate the penalty.** The taxpayer cannot rely on the CPA or others to pay his liability and we saw no evidence that his medical condition prevented him from making payments. He was able to operate one or more corporations and

earn an income from 1999 to the present.

We also find that the joint liability is also the responsibility of the spouse, who was involved in the home and business with him. The failure to pay is also her responsibility.

You also requested a written response to your calculation of the amounts due based on your submitted computations in a December 30, 2004 letter. I recall sending you transcripts and explanation of the transcripts on November 16, 2004 and wonder what else there can be to submit. The computations per the transcripts were found to be correct and I didn't think there was a need for further explanations.

After I found there were no likely abatements of penalties, I asked that you submit any alternatives to the levy action to me with financial statements. I cannot consider any alternatives to the levy action without financial statements. Without viable alternatives, I have to sustain the levy action. [Reproduced literally.]

On April 26, 2005, respondent's Appeals Office issued to petitioner a notice of determination concerning collection action(s) under section 6320 and/or 6330 (notice of determination). That notice stated in pertinent part:

**Summary of Determination**

You sent the Service a Letter of Protest subsequent to a CP504 letter, Urgent letter, and subsequent to a notice of intent to levy, LT 11. The Service Center considered this a request for a hearing regarding the notice of intent to levy and considered it timely.

You disagreed with the underlying liability and stated that the Service owed you money.

We tried to hold a hearing with you and held a telephone and correspondence hearing with your new representatives. We wrote to you and explained the reasons for the balances due for 1999.

You didn't raise any issues or alternatives regarding the levy action. You didn't submit financial information to determine your ability to pay.

Without further information from you, we are sustaining the levy action. [Reproduced literally.]

An attachment to the notice of determination stated in pertinent part:

### SUMMARY OF THE ISSUES

The taxpayer sent the Service Center a letter of protest on 03-08-2004, arguing that the balances were in error. This was shortly after an Urgent notice and a notice of intent to levy, so the Service Center determined this was a timely request for a collection due process hearing.

The taxpayer argued that the balances were in error. The taxpayer stated that refunds and changes were misapplied.

A hearing was offered to the taxpayer and two representatives. A telephone and correspondence hearings were held with the representatives. The balance of the account was explained to them. I found nothing unusual in the postings of the 1999 liability and the payments by refunds from later years. The taxpayer and representatives raised no discussions regarding alternatives the levy action.

The underlying liability is correct as posted to the account.

### RECOMMENDATION

The levy action is sustained without other information to determine a lesser intrusive method of collection.

### BRIEF BACKGROUND

The 1999 liability was first set up by Substitute for return and a statutory notice of deficiency. After the notice was defaulted, the taxpayer submitted a return with an increased liability. The self-corrected increases to the account were assessed. Later, there was

a carry back from later years to further correct the liability to a lower amount.  Refunds were taken from later years to make additional payments.

Since the return was filed later and insufficient withholding was set up, the account includes the failure to pay penalty, the failure to file penalty, an estimated tax penalty and interest.  As amendments and payments were applied, corrections were made to the account.

In review of a current transcript, Appeals finds the Service levied and took $2,236.512 on 05-17-2004, after the taxpayer had timely requested an appeal.  **This amount shouldn't have been levied.**  The late posting of the request for appeals allowed the Service to enforce a levy action without a suspension during the CDP suspension period.  **The CDP unit in Covington, KY was advised to return the levied funds and it was refunded during the hearing period.**

## DISCUSSION AND ANALYSIS
## APPLICABLE LAW AND ADMINISTRATIVE PROCEDURES

       *          *          *          *          *          *          *

In review of the file and transcripts, it appears that all manual and legal procedures have been properly followed.  This Appeals Officer has not dealt with this taxpayer in the past regarding this liability.  I did have involvement in the taxpayer's corporation in the past, but not regarding the current type of individual taxes or years.  The taxpayer signed a waiver of my involvement.

I found one error on May 17, 2004, when the Service took levy funds during the CDP hearing period of collection suspension.  The CDP unit was advised to return the funds.  The cause for the premature levy action was the late input of the suspension code on the account. The request for a hearing was timely received on March 12, 2004 but the suspension code TC 520 cc 77 was not input until cycle 200429, approximately August.  Appeals believes the CDP unit didn't recognize the CDP request until June of 2004 because the taxpayer didn't use form 12253.  When they allowed the CDP hearing, the CDP unit should ensure premature levy was returned to the taxpayer.

Under section 6330, the taxpayer can question the underlying unless he has been previously given the right to appeal or petition the Tax Court regarding the matter. In this situation, the taxpayer defaulted the statutory notice of deficiency and later amended his own return to report more income and liability. He doesn't appear to argue those actions of his own, although indicating he disagrees with his own pre-parer's computations of an additional liability. The remains of the account are postings of payments from a carry back or from later year refunds. There appear to be no errors in the postings of those changes and payments.

### RELEVANT ISSUES PRESENTED BY THE TAXPAYER

I believe I have addressed all relevant issues presented by the taxpayer. The taxpayer and representative haven't presented further arguments that are on point to the case. They didn't present an alternative or lesser intrusive method of payment to the levy action

The representative submitted numerous copies of medical receipts showing the taxpayer/husband encountered various medical problems in 1999 through 2003. I didn't find the information would show a reasonable cause to reduce any penalties assessed on the 1999 liability. In addition, the taxpayer had prior opportunities to either petition the Tax Court or file an appeal regarding the penalties and interest in prior years. They should not be allowed to argue those underlying liabilities in this CDP hearing.

### BALANCING EFFICIENT COLLECTION AND INTRUSIVENESS

Under the circumstances of the case, the levy action balances an efficient method of collection when considering the legitimate concerns of the taxpayer that it be no more intrusive than necessary.

The levy action is sustained. [Reproduced literally.]

<u>Discussion</u>

The Court may grant summary judgment where there is no genuine issue of material fact and a decision may be rendered as

a matter of law.  Rule 121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  We conclude that there are no genuine issues of material fact regarding the questions raised in respondent's motion.[7]

A taxpayer may raise challenges to the existence or the amount of the taxpayer's underlying tax liability if the taxpayer did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the tax liability, sec. 6330(c)(2)(B), including the tax liability reported in the return that such taxpayer filed, <u>Montgomery v. Commissioner</u>, 122 T.C. 1 (2004). Where the validity of the underlying tax liability is properly placed at issue, the Court will review the matter on a de novo basis.  <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000).

We turn first to the tax that respondent assessed with respect to petitioner's taxable year 1999.  With respect to the tax of $7,691 determined in the 1999 notice of deficiency that respondent assessed on February 24, 2003, petitioner received that notice, but he did not file a petition with respect to it.

---

[7]The party opposing summary judgment must set forth specific facts that show a genuine issue of material fact exists and may not rely merely on allegations or denials in the pleadings. <u>Grant Creek Water Works, Ltd. v. Commissioner</u>, 91 T.C. 322, 325 (1988); <u>Casanova Co. v. Commissioner</u>, 87 T.C. 214, 217 (1986). As indicated <u>supra</u> note 1, petitioner did not file a response to respondent's motion.  Petitioner relies merely on allegations in the petition.

On the instant record, we find that petitioner may not challenge the existence or the amount of the tax of $7,691 determined in the 1999 notice of deficiency that respondent assessed on February 24, 2003.

With respect to the $21,378 increase in 1999 tax that respondent assessed on May 5, 2003, and that is attributable to the 1999 return, petitioner did not receive a notice of deficiency and did not otherwise have an opportunity to dispute that tax. We shall review on a de novo basis respondent's determinations with respect to such increase in 1999 tax. Sego v. Commissioner, supra; Goza v. Commissioner, supra. Petitioner made general and vague allegations in the petition about whether the total tax for his taxable year 1999 is the amount shown as total tax in the 1999 return. However, petitioner failed to specify the basis for any disagreement that he may have regarding the total tax shown in that return.[8] On the instant record, we find that petitioner has failed to show that he is not liable for the $21,378 increase in 1999 tax that respondent assessed on May 5, 2003, and that is attributable to the 1999 return.

We turn next to the respective additions to tax under section 6651(a)(1) and (2) that respondent assessed with respect

---

[8]Petitioner did not claim in the petition that any items of income, deduction, or credit reported, or any computations made, in the 1999 return were incorrect.

to petitioner's taxable year 1999.[9]  With respect to the additions to tax under section 6651(a)(1) and (2) of $1,036.57 and $806.22, respectively, determined in the 1999 notice of deficiency that respondent assessed on February 24, 2003, as discussed above, petitioner received the 1999 notice of deficiency in which respondent, inter alia, determined such additions to tax, but he did not file a petition with respect to that notice. On the instant record, we find that petitioner may not challenge the existence or the amount of the additions to tax under section 6651(a)(1) and (2) of $1,036.57 and $806.22, respectively, determined in the 1999 notice of deficiency that respondent assessed on February 24, 2003.

With respect to the increases in the 1999 additions to tax under section 6651(a)(1) and (2) of $4,351.06 and $3,743.33, respectively, that respondent assessed on May 5, 2003, and that are attributable to the 1999 return, petitioner did not receive a

---

[9]Petitioner does not dispute respondent's determination that respondent may proceed to collect any unpaid addition to tax under sec. 6654 for his taxable year 1999 determined in the 1999 notice of deficiency that respondent assessed on Feb. 24, 2003. With respect to the respective additions to tax under sec. 6651(a)(1) and (2) that respondent assessed for petitioner's taxable year 1999, petitioner alleges in the petition that he seeks "abatement" of those additions to tax.  We construe that allegation as a request to review (1) whether petitioner is liable for the respective additions to tax under sec. 6651(a)(1) and (2) that respondent assessed for his taxable year 1999 and (2) whether, if the Court were to find that he is so liable, respondent may proceed to collect such additions to tax.

notice of deficiency and did not otherwise have an opportunity to dispute those additions to tax. We shall review on a de novo basis respondent's determinations with respect to such increases in the 1999 additions to tax. Sego v. Commissioner, supra; Goza v. Commissioner, supra. Section 6651(a)(1) imposes an addition to tax for failure to file timely a return. Section 6651(a)(2) imposes an addition to tax for failure to pay timely the amount shown as tax in a return. The respective additions to tax under section 6651(a)(1) and (2) do not apply if the failures to file timely and to pay timely are due to reasonable cause and not to willful neglect. Respondent has the burden of production with respect to the increases in the 1999 additions to tax under section 6651(a)(1) and (2). Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Although respondent bears the burden of production with respect to such increases, respondent "need not introduce evidence regarding reasonable cause * * * or similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues." Higbee v. Commissioner, supra.

With respect to the increase in the 1999 addition to tax under section 6651(a)(1), petitioner claims, and respondent disputes, that petitioner submitted timely an unsigned return for his taxable year 1999. Assuming arguendo that petitioner had timely submitted an unsigned return for his taxable year 1999, such unsigned return does not constitute a valid tax return for

that year. See Elliott v. Commissioner, 113 T.C. 125, 128 (1999). We conclude that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the increase in the 1999 addition to tax under section 6651(a)(1) of $4,351.06 that respondent assessed on May 5, 2003, and that is attributable to the 1999 return which petitioner and Ms. Shannon signed and which respondent filed sometime shortly after it was sent to respondent around March 18, 2003.

With respect to the increase in the 1999 addition to tax under section 6651(a)(2), the record establishes, and petitioner conceded in the petition, that he failed to pay timely the tax shown in the 1999 return. We conclude that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the increase in the 1999 addition to tax under section 6651(a)(2) that respondent assessed on May 5, 2003, and that is attributable to the 1999 return which petitioner and Ms. Shannon signed and which respondent filed shortly after it was sent to respondent around March 18, 2003.

We address now whether petitioner has carried his burden of establishing that he is not liable for the increase in the 1999 addition to tax under section 6651(a)(1) that respondent assessed on May 5, 2003, and that is attributable to the 1999 return. As we understand petitioner's position, he contends that he timely sent to respondent an unsigned return for his taxable year 1999.

Consequently, according to petitioner, his failure to file timely a return for his taxable year 1999 was due to reasonable cause and not to willful neglect.  Even if petitioner timely sent to respondent an unsigned return for his taxable year 1999, which respondent disputes, any such action by petitioner would not establish that his failure to file timely a return for his taxable year 1999 was due to reasonable cause and not to willful neglect.  See Elliott v. Commissioner, supra at 128-131.  On the instant record, we find that petitioner has failed to show that he is not liable for the increase in the 1999 addition to tax under section 6651(a)(1) that respondent assessed on May 5, 2003, and that is attributable to the 1999 return.

We address next whether petitioner has carried his burden of establishing that he is not liable for the increase in the 1999 addition to tax under section 6651(a)(2) that respondent assessed on May 5, 2003, and that is attributable to the 1999 return.  As discussed above, petitioner conceded in the petition that he did not pay timely the tax shown in the 1999 return.  Nonetheless, as we understand petitioner's position, he contends that he relied on the advice of a certified public accountant that he did not have to pay the tax shown due in the 1999 return when that return was sent to respondent around March 18, 2003.  Consequently, according to petitioner, his failure to pay timely the tax shown in the 1999 return was due to reasonable cause and not to willful

neglect. In this connection, petitioner alleged in the petition:

> Petitioner demonstrated prudence by engaging a CPA to advise him on his personal and business tax matters. The Petitioner relied on the advice of his former CPA, who gave assurance that application of subsequent taxable years' tax overpayments to the Petitioner's 1999 underpayment would result in elimination of his tax liability for 1999. While this advice was clearly erroneous, the Petitioner had no way of knowing this fact and was in no condition to challenge this advice. Had petitioner been correctly advised by this former CPA, Petitioner would have taken the correct action, request that this be considered in determining the appropriateness of the application of the failure to pay penalty. [Reproduced literally.]

Assuming arguendo that a certified public accountant advised petitioner that he did not have to pay the tax shown due in the 1999 return when that return was sent to respondent around March 18, 2003, we reject any argument by petitioner that any reliance by him on such advice establishes that his failure to pay timely the tax shown in that return was due to reasonable cause and not to willful neglect. The last date prescribed for the timely payment of tax for petitioner's taxable year 1999 was April 15, 2000. Secs. 6072(a), 6151(a). The standard for reasonable cause under section 6651(a)(2) is a one-time test to be passed or failed as of the due date for the tax payment.[10] In order to establish that his failure to pay timely the tax shown in the 1999 return was due to reasonable cause and not to willful neglect, petitioner must show that reasonable cause existed on

_____

[10]See Estate of Hartsell v. Commissioner, T.C. Memo. 2004-211.

April 15, 2000, the last date prescribed for the timely payment of tax for petitioner's taxable year 1999. See secs. 6072(a), 6151(a). Petitioner does not contend, and the record does not establish, that on April 15, 2000, he had reasonable cause for his failure to pay timely the tax shown in the 1999 return.

We address next petitioner's position that he is not liable for the increase in the 1999 addition to tax under section 6651(a)(2) that respondent assessed on May 5, 2003, and that is attributable to the 1999 return because respondent incorrectly calculated the amount of such increase in such addition to tax. In this connection, petitioner alleged in the petition:

> the IRS should allow credit for taxes paid [by with-holding] when the Petitioner makes a payment [by with-holding] not some 15 months later. Petitioner will demonstrate monies were in the hands of the government and unavailable to Petitioner far before they are being credited to the Petitioners account allowing the IRS to assess penalties * * * upon funds that it holds. [Reproduced literally.]

As we understand it, it is petitioner's position that any tax withheld from wages that he received during taxable years after his taxable year 1999 should be applied to his unpaid total 1999 liability at the time such tax was withheld. We reject any such position. Any tax withheld from an individual's wages is deemed paid by the individual on the 15th day of the fourth month following the close of the taxable year with respect to which such tax is allowable as a credit under section 31. See sec. 6513(b)(1).

On the instant record, we find that petitioner has failed to show that he is not liable for the increase in the 1999 addition to tax under section 6651(a)(2) that respondent assessed on May 5, 2003, and that is attributable to the 1999 return.

We consider now petitioner's claim in the petition for abatement of interest with respect to his taxable year 1999. We construe that claim as a request to review respondent's failure to abate interest under section 6404(e),[11] which we shall review for abuse of discretion. See sec. 6404(h); see also Lee v. Commissioner, 113 T.C. 145, 149 (1999). Section 6404(e) permits respondent to abate interest with respect to an unreasonable error or delay resulting from managerial and ministerial acts.[12]

Petitioner alleged in the petition:

The majority of the payments made in this case were by way of payroll deductions from the Petitioner and were not applied to the tax in some cases until some sixteen months after the government received the money. For

_____

[11]In petitioner's December 30, 2004 letter, petitioner requested that respondent abate interest with respect to his taxable year 1999. Respondent's Appeals Office did not abate such interest. We have jurisdiction to review respondent's determination not to abate interest with respect to petitioner's taxable year 1999. Sec. 6404(h); Katz v. Commissioner, 115 T.C. 329, 340-341 (2000).

[12]Sec. 6404(e) was amended by Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301, 110 Stat. 1452, 1457 (1996), to permit the Secretary to abate interest with respect to an "unreasonable" error or delay resulting from "managerial" as well as ministerial acts. The foregoing amendment applies to interest accruing with respect to deficiencies or payments for taxable years beginning after July 30, 1996, and is applicable in the instant case.

example, monies deducted from the Petitioner's January 2000 paycheck were not applied to the taxes due until Apr 15, 2001 when the taxes for 2000 were due. Applying 1/12 of the refund due for tax year 2000 evenly throughout 2000 as payments against the taxes due would significantly reduce the interest charge in this case and more fairly represent the actual amount that should be owed.

* * * In addition interest in this case is eligible for abatement because the delayed payments were not due solely to the actions of the Petitioner, but were caused by bad advice from a former CPA. [Reproduced literally.]

We turn first to petitioner's contention that respondent abused respondent's discretion in failing to abate interest on petitioner's unpaid total 1999 liability because respondent did not apply tax withheld from wages that petitioner received during taxable years after his taxable year 1999 to his unpaid total 1999 liability at the time such tax was withheld. We reject that contention. As discussed above, any tax withheld from an individual's wages is deemed paid by the individual on the 15th day of the fourth month following the close of the taxable year with respect to which such tax is allowable as a credit under section 31. See sec. 6513(b)(1).

We turn next to petitioner's contention that respondent abused respondent's discretion in failing to abate interest on petitioner's unpaid total 1999 liability because he received "bad advice" from a certified public accountant. We reject that contention. Any advice that petitioner received from a certified public accountant is not a basis under section 6404(e) on which

respondent may abate interest with respect to petitioner's taxable year 1999.

Based upon our examination of the entire record before us, we sustain respondent's determination in the notice of determination to proceed with the collection action with respect to petitioner's taxable year 1999.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

On the record before us, we shall grant respondent's motion.

To reflect the foregoing,

<u>An order granting respondent's motion and decision for respondent will be entered</u>.