## Appeal of GLADDING DRY GOODS CO.

Docket No. 2225. Submitted May 15, 1925. Decided July 14, 1925.

> Where the lessee and the lessor, during the term of a lease, agree on the extension of the lease upon the condition or agreement that the lessee incur the expense of all necessary improvements, the cost to the lessee of such improvements thereafter made should be depreciated or amortized over the period of the lease as extended and not over the term of the original lease.

*Robert E. Jacobson, Esq.,* for the taxpayer.
*A. R. Marrs, Esq.,* for the Commissioner.

Before MARQUETTE, IVINS, and MORRIS.

This appeal is from a determination by the Commissioner of a deficiency in income and profits taxes for the fiscal years ended January 31, 1920, and January 31, 1921, in the net amount of $3,418.14. The facts were presented by the pleadings and exhibits, from which the Board makes the following

FINDINGS OF FACT.

The taxpayer is a Rhode Island corporation with its principal office in Providence. It is engaged in the business of operating a dry goods or department store.

On November 3, 1919, the taxpayer was the assignee and owner of a certain lease (hereinafter called the lease), dated December 24, 1889, covering the premises occupied for its store, which lease, by its terms, would expire on December 31, 1930.

On November 3, 1919, the taxpayer entered into an agreement (hereinafter called the agreement) with the lessors, by which agreement the term of the lease was extended for a period of ten years, beginning January 1, 1931, and ending December 31, 1940.

Pursuant to other provisions of the agreement, the taxpayer made expenditures for improvements and betterments of the prop-

erty, amounting to $450,489.07 up to January 31, 1922, and, by the terms of the agreement, all improvements and betterments made by the taxpayer up to December 31, 1930, will become the property of the lessors on December 31, 1930.

It was further provided by the agreement that all provisions of the lease should continue during the ten years' extension period, except as the same would be fully performed on December 31, 1930, and except as otherwise provided in the agreement.

The rental to be paid during said ten years' extension period, in the absence of any agreement between the parties determining such rental, is to be determined in the manner provided for in the lease,

and shall be fixed having due regard, as one of the elements of value of the property leased, to all of the buildings, structures and improvements upon the leased premises as being the property of the lessors, including all such buildings, structures and improvements as the said Gladding Company, its successors or assigns, shall place upon said premises prior to January 1, 1931, * * * excepting and providing, however, that from the annual rent for the period January 1, 1931, to December 31, 1940, if fixed by appraisers in the manner aforesaid, there shall be deducted the sum of twenty-four hundred (2,400) dollars.

The lease provided that rental for the ten years beginning January 1, 1911, and for the ten years beginning January 1, 1921, should be determined, respectively, by reference of the matter to three disinterested persons, such reference being made between six months and nine months prior to the beginning of the respective ten-year periods.

In its tax returns for the fiscal years ended January 31, 1920, and January 31, 1921, the taxpayer deducted, as depreciation of its property investment or as amortization, an aliquot proportion of its expenditures for such improvements and betterments, based upon the exhaustion or return of the same by December 31, 1930.

The Commissioner disallowed the deduction as taken and spread the same in aliquot proportions over the period ending December 31, 1940, and, by reason of such disallowance, determined the net deficiency for the two fiscal years in question amounting to $3,418.14. From that determination the taxpayer duly filed its appeal with this Board.

DECISION.

The determination of the Commissioner is approved.

OPINION.

IVINS: During the term of the lease, and eleven years prior to its expiration date, the lessors and lessee agreed to an extension of the term for ten years beyond the original date of expiration. The lessors agreed to the extension only on the condition that the lessee

bear the cost of certain improvements. The improvements were made at a cost to the lessee of $450,489.07 up to a certain date. The parties agreed that the improvements would become the property of the lessors at the expiration date of the original lease.

In that situation, is the lessee entitled to depreciate the cost of improvements over the period ending with the original expiration date, or should the depreciation be spread over the full period as extended?

It is a fact of no importance in this connection, if true, that the legal title to the improvements vests immediately in the lessee. *Appeal of National City Bank of Seattle*, 1 B. T. A. 139. Nor is it important that the title vests in the lessors on December 31, 1930, the original date for the expiration of the lease. The improvements were all made after the extension was agreed upon. Both parties then knew that the lessee would enjoy the beneficial use of the improvements up to 1941 or for the life of the improvements, whichever would be the shorter period. As stated by us in *Appeal of National City Bank of Seattle, supra:*

From the standpoint of the lessee they [payments made by a lessee for improvements upon the lessor's premises] represent an investment of capital for improvements which will inure to the benefit of the lessee for the term of the lease, or for the term of the useful life of the improvements.

" Depreciation " is an allowance for the recovery of a capital investment. *Appeal of Even Realty Co.*, 1 B. T. A. 355; *Appeal of The Brevoort Hotel Co.*, 1 B. T. A. 132. It is not predicated upon ownership of the property, but rather upon an investment in property which is thereafter used. The important question is not, in whom vests the fee or when it vested, but who made the investment of the capital which is to be recovered over the period of the exhaustion of the property. The one who made the investment is entitled to its return.

Obviously, a lessee has no opportunity to afford himself such recovery after his right to the use and enjoyment of the property has expired. It is equally apparent that a lessor who has made no investment possesses nothing upon which such a recovery of capital can be predicated. That improvements made upon his property do, by operation of law, vest in him the ownership of the improvements, has no bearing upon the investment which is to be returned. He then has a bare legal title and nothing more. He is debarred from any enjoyment of the improvements so long as the terms of the lease are performed. His enjoyment is confined to the receipt of rental payments and, until a default under the lease, he has nothing but a mere expectation of future realization.

Conversely, if the lessor makes the improvements at his expense during the term of the lease, or otherwise, the fact that the lessee

has the use and enjoyment of the improvements would not bar a claim by the lessor to an allowance for the depreciation of his investment or exhaustion of the property used.

The material elements are, the person who makes the investment, use of the property, and the period over which that investment is to be recovered out of income. Ordinarily, such recovery should be made during the probable useful life of the improvement, or, as stated by us in *Appeal of Richmond Dairy Lunch*, 1 B. T. A. 876, 878, 879:

> The reason for such deduction is to provide a method by which the capital investment of a taxpayer may be kept intact while its physical properties, or some of them, may be losing their capital value by reason of their use in business or by lapse of time. This deduction, however, must be computed ratably over the period of the useful life of the property and at a rate that will restore the capital cost at the end of the period when the property may be presumed to have lost its usefulness.

See also, *Appeal of William J. Ostheimer*, 1 B. T. A. 18; *Appeal of The Brevoort Hotel Co.*, 1 B. T. A. 132; *Appeal of Grosvenor Atterbury*, 1 B. T. A. 169; *Appeal of Wigwam Amusement Co.*, 1 B. T. A. 335.

When the lessee makes the investment the period of exhaustion of the property and recovery of the capital should be spread over the time that the lessee is entitled to the enjoyment of the use of the property.

In many cases depreciation in the capital investment is equivalent to the exhaustion of the property acquired with the capital. The proportionate recovery of the capital out of income provides a fund that equally replaces the exhaustion by a monetary equivalent, but it is the use of the property, through the period of time in which that use takes place, that finds a resultant in the exhaustion of the property and the contemporaneous depreciation of the capital. Unless recovered during the period of enjoyment a real and substantial loss will result. Just as " depreciation " has a meaning in its ordinary and usual sense as understood by business men, *Von Baumbach v. Sargent Land Co.*, 242 U. S. 503, so with the " reasonable allowance for exhaustion, wear and tear of property used in business."

In the present appeal, expense of $450,000 was incurred within three years after the extension agreement was made. Prudent business men would not have caused that expense to the corporation except with the expectation of obtaining the return of the expenditure by reason of the ten-year extension. They obviously desired the extension for the very purpose of therein recovering the capital expenditure—of having twenty-one years instead of eleven during which the earnings would prove the justification for the improvement expense borne by the corporation. With their responsibility to stockholders they could hardly have done otherwise. Obviously,

if they contemplated recovering the expense before December 31, 1930, there was no occasion for obtaining the ten-year extension at a time eleven years prior to the original expiration date. They did not intend to spend the corporation's money unless the corporation had the benefit of twenty-one years over which it could recover its capital. Thereby the charge against annual earnings would be more conservative and uniform, with a larger annual sum available for dividends to the stockholders.

We impute to the taxpayer the exercise of such reasonable business judgment as the ordinarily prudent business man would exercise under like or similar circumstances. It would be reasonable to prorate the expense over the entire period of the enjoyment of the improvements by the taxpayer. Accordingly, the determination by the Commissioner was correct.