[SEAL]

GRANT CREEK WATER WORKS, LTD., JACK L. GREEN II, THE TAX MATTERS PARTNER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21345-87.      Filed August 2, 1988.

*Thomas F. Topel,* for the petitioner.
*Thomas E. Ritter,* for the respondent.

OPINION

KÖRNER, *Judge:* This case is now before us on respondent's motion for summary judgment and petitioner's motion to certify a question of law to the Supreme Court of Montana. This Court heard arguments on both motions at a trial session in Helena, Montana, on June 28, 1988.

For purposes of these motions, the parties agree on the following facts, as set forth in respondent's motion for summary judgment and the exhibits thereto, and as modified by the adjustments set forth in petitioner's memorandum in opposition to that motion.

Western Montana Land Co. (Western) was formed in 1977. It subsequently became the general partner of Grant

Creek Associates, Ltd., a Montana limited partnership. That limited partnership developed plans for a residential subdivision in Missoula County, Montana. In order to provide the subdivision with water facilities, Missoula County (a political subdivision of the State of Montana) established rural special improvement district numbers 395 and 396, and constructed a water system at a cost of $712,667.

On or about November 21, 1983, Missoula County and Western entered into an agreement whereby Missoula County agreed to and purported to transfer ownership of the water system to Western. Western paid no monetary consideration to Missoula County at the time of the transfer, but did agree, inter alia, to operate and maintain the water system for its own account and expense, to insure the water system against disaster, and to hold Missoula County "harmless from any and all causes of action, claims, obligations, liabilities and demands of any kind" stemming from the water system.

On or about December 15, 1983, Western entered into an agreement with R. Montana, Inc., whereby it agreed to sell the water system to R. Montana, Inc., for $1,163,746, payable $96,000 down and the balance in installments. On or about that same day, Grant Creek Water Works, Ltd., a limited partnership, petitioner herein (Grant Creek), allegedly purchased the water system from R. Montana, Inc., for $1,163,746, payable $96,000 down and the balance in installments. Grant Creek then leased the water system to Western for the period from December 15, 1983, through December 31, 2007. Under the terms of the lease, Western was to make the following fixed rental payments to Grant Creek:

| Year(s) | Annual payments |
| --- | --- |
| 1983 | $12,885.75 |
| 1984 | 100,230.00 |
| 1985-1990 | 101,830.00 |
| 1991-1997 | 154,630.00 |
| 1998-2007 | 219,702.00 |

The lease was a "net net lease" in that Western was obligated to pay all taxes, insurance, repairs, maintenance, and other expenses related to the water system.

Grant Creek reported the following amounts of revenue and expense on its Federal partnership income tax return for 1983:

| | | |
|---|---:|---:|
| Gross rents............................................. | | $12,886 |
| Expenses | | |
| Depreciation................................. | $5,699 | |
| Interest...................................... | 10,678 | |
| Professional services......................... | 2,083 | |
| Accounting................................... | 125 | |
| Amortization................................. | 33 | 18,618 |
| Net loss..................................... | | 5,732 |

In his notice of final partnership administrative adjustment, respondent determined the following adjustments to Grant Creek's ordinary income:

| | |
|---|---:|
| Gross rents............................................. | ($12,886) |
| Depreciation expense ...................................... | 5,699 |
| Interest expense.......................................... | 10,678 |
| Accounting expense........................................ | 125 |
| Professional services expense.............................. | 2,083 |
| Total increase ........................................... | 5,699 |

Respondent also determined in the notice the following adjustments to Grant Creek's separately stated items:

| | |
|---|---:|
| Investment in property qualified for ITC.................... | ($1,163,746) |
| Tax preference items—accelerated depreciation on leased | |
| personal property...................................... | (3,174) |

In addition to the above adjustments, respondent determined that the following additions to tax apply to deficiencies at the partner level: Sections 6653(a)(1), 6653(a)(2), 6659, and 6621(d).[1]

Respondent based the above adjustments on his determination that the sale and leaseback entered into by Grant Creek was a sham structured primarily for tax avoidance. If the sale and leaseback was determined to be recognizable for tax purposes, respondent raised alternative issues to support portions of the determinations. In its petition, Grant Creek contested respondent's determinations.

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

For purposes of these motions, the parties agree that Western was a regulated public utility within the meaning of Montana Code Annotated (M.C.A.) section 7-12-2127 (1987) when Missoula County allegedly transferred ownership of the water system to it.

## Respondent's Motion

The first motion before us is respondent's motion for summary judgment.

Pursuant to Rule 121, respondent, the party moving for summary judgment in this case, has the burden of demonstrating that no genuine issue as to any material fact exists, and that he is entitled to judgment as a matter of law.[2] *Adickes v. Kress & Co.,* 398 U.S. 144, 157 (1970); *Gulfstream Land & Development v. Commissioner,* 71 T.C. 587, 596 (1979). The facts relied upon by respondent must be viewed in the light most favorable to petitioner so that any doubt as to the existence of a genuine issue of material fact will be resolved in favor of denying the motion. *Adickes v. Kress & Co., supra* at 157; *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Nevertheless, the motion must be granted if the Court is satisfied that no real factual controversy is present so that the remedy can serve "its salutory purpose in avoiding a useless, expensive and time consuming trial where there is no genuine, material fact issue to be tried." *Lyons v. Board of Education of Charleston,* 523 F.2d 340, 347 (8th Cir. 1975). Finally, petitioner, as the party opposing summary judgment, may not simply rest upon the mere allegations or denials of his pleading; his response, by affidavit or otherwise, must set forth specific facts showing there is a genuine issue for trial. Rule 121(d).

---

[2]Rule 121 provides in pertinent part:

(a) General: Either party may move, with or without supporting affidavits, for a summary adjudication in his favor upon all or any part of the legal issues in controversy. * * *

(b) Motion and Proceedings Thereon: The motion shall be filed and served in accordance with the requirements otherwise applicable * * * An opposing written response, with· or without supporting affidavits, shall be filed within such period as the Court may direct. A decision shall thereafter be rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. * * *

Respondent bases his motion for summary judgment on the premise that Missoula County's transfer of the water system to Western was illegal and void. Respondent argues (1) that Western therefore never obtained ownership or control of the water system, (2) that Western was therefore unable to transfer ownership or control of the water system through R. Montana, Inc., to Grant Creek, and (3) that Grant Creek can therefore not claim depreciation or investment tax credit on the water system. Respondent also contends that Grant Creek was formed or availed of primarily for tax avoidance, and it is therefore not entitled to the deductions it claimed for expenses.

## 1. *Depreciation and Investment Tax Credit*

Respondent's argument that Grant Creek is not entitled to claim depreciation or investment tax credit on the water system is based on the premise that Missoula County never legally transferred ownership and control of the water system. Even if that were true, however, it would not establish that Grant Creek had not acquired a depreciable interest in the water system.

It has long been recognized that taxation is not so much concerned with the refinement of title as it is with actual command over the property taxed. *Corliss v. Bowers,* 281 U.S. 376, 378 (1930). Depreciation deductions are accordingly predicated on an investment in property rather than ownership of legal title. *Gladding Dry Goods Co. v. Commissioner,* 2 B.T.A. 336, 338 (1925). Whether a taxpayer has received an interest in property that entitles him to investment tax credit and depreciation deductions depends on whether the benefits and burdens of ownership have passed to the taxpayer. *Grodt & McKay Realty, Inc. v. Commissioner,* 77 T.C. 1221, 1235-1238 (1981). As we have recognized, this is a question of fact that must be ascertained from the intention of the parties as evidenced by the written agreements read in light of the attending facts and circumstances. *Durkin v. Commissioner,* 87 T.C. 1329, 1367 (1986). Our inquiry must be deeper than merely determining whether Missoula County formally transferred the benefits and burdens of ownership of the water system by contract. See *Grodt & McKay Realty, Inc. v. Commis-*

*sioner, supra* at 1237-1238. We must determine whether Grant Creek, *in substance,* received the benefits and burdens of ownership. That determination presents issues that involve unagreed upon facts, and makes summary judgment on these matters inappropriate.

## 2. *Other Deductions*

Respondent bases his motion that he is entitled to summary judgment as to the other deductions that he disallowed in his notice of deficiency on his conclusion that Grant Creek was formed or availed of primarily for tax avoidance. He reached that conclusion based on language in Grant Creek's private placement memorandum that emphasizes the tax benefits of investing in the partnership. We are unwilling to conclude, based on that fact alone, that Grant Creek was not formed or availed of for profit. In our view, the private placement memorandum could have emphasized Grant Creek's tax benefits simply to make it attractive to potential investors. See *Collins v. Commissioner,* T.C. Memo. 1987-259. Whether Grant Creek was engaged in for profit is a separate and more involved factual question. Our determination must be based on the partnership's intent, and in determining that intent we must focus on the intent of the partnership's promoters and general partners. *Taube v. Commissioner,* 88 T.C. 464, 480 (1987); *Surloff v. Commissioner,* 81 T.C. 210, 233 (1983). The agreed upon facts do not establish their intent.

In sum, we conclude that respondent is not entitled to summary judgment in this case.

## *Petitioner's Motion*

Having decided that respondent is not entitled to summary judgment, we must next decide petitioner's motion for certification of a question of law to the Supreme Court of Montana.[3]

A major issue in this case is whether Missoula County's transfer of the water system was legally valid. Respondent argues that M.C.A. sections 7-8-2211 through 7-8-2214

---

[3]Our decision that respondent is not entitled to summary judgment renders petitioner's motion moot to the extent it requests us to stay a decision on respondent's motion pending the decision of the Supreme Court of Montana.

(1987) apply to invalidate the transfer. Those sections provide, inter alia, that county property may be exchanged only if property and/or cash of commensurate value is received for it, and that all property with a value in excess of $2,500 must be sold at public auction and must have been appraised by the county before the sale. Respondent argues that those requirements were not met and that the purported transfer of the water system to Western was therefore invalid.

Petitioner argues that M.C.A. section 7-12-2127 (1987) applies to the transfer.[4] That section authorizes transfer of operation, control, and ownership of improvement district utility property to a regulated public utility "upon such terms and conditions as may be agreed to." Petitioner thus argues that M.C.A. section 7-12-2127, being the particular statute which is more specific to the facts of this case, takes precedence, and that the purported transfer from Missoula County to Western was valid regardless of the fact that the requirements of M.C.A. sections 7-8-2211 et seq. were not met.

Rule 44 of the Montana Rules of Appellate Procedure provides that a U.S. court may certify a question of Montana law to the Supreme Court of Montana where the question is controlling in Federal litigation, where there is substantial ground for difference of opinion, and where adjudication by the Supreme Court of Montana will materially advance the ultimate termination of the Federal litigation.[5]

---

[4]M.C.A. sec. 7-12-2127 (1987) provides as follows:

7-12-2127. Transfer of operation, control, and ownership of improvement district facilities to a utility. Whenever a special improvement district has been created in accordance with the provisions of this part for the purpose of providing the facilities through which a regulated utility is to provide utility services to the district, the commissioners may, upon such terms and conditions as may be agreed to, transfer the operation, control, and ownership of the facilities to the regulated utility for use by the utility to provide utility services.

[5]Rule 44 of the Montana Rules of Appellate Procedure provides in relevant part as follows:

Rule 44. Certification of questions of law.

(a) Power to answer. Whenever in an action pending in a United States court it shall appear that there is a controlling question of Montana law as to which there is a substantial ground for difference of opinion, a judge of the United States court wherein the action is pending may certify that the question upon which adjudication is sought is controlling in the federal litigation and the adjudication by the supreme court of Montana will materially advance ultimate termination of the federal litigation. * * *

All of these conditions are met in this case. First, the issue of whether a Montana county may transfer ownership of a utility facility to a regulated utility by complying solely with the terms of M.C.A. section 7-12-2127 (1987), a pure question of Montana law, controls the issue of whether Missoula County's transfer in this case is legally valid. Second, as the parties to this case have demonstrated, there is substantial ground for difference of opinion on the issue. Third, it does not appear that the question presented herein under M.C.A. section 7-12-2127 (1987) has previously been addressed by the highest court of Montana. Finally, adjudication by the Supreme Court of Montana would materially advance the ultimate termination of this case by disposing of a major issue between the parties and by narrowing and focusing the remaining issues to be tried by the parties.

In these circumstances, we conclude that it is appropriate to grant petitioner's motion to certify the following question to the Supreme Court of Montana pursuant to rule 44 of the Montana Rules of Appellate Procedure:

May Montana county commissioners transfer the ownership of utility facilities, created by a special improvement district in accordance with M.C.A. sections 7-12-1101, et seq. (1987) to a regulated utility by complying solely with the terms of M.C.A. section 7-12-2127 (1987), or must the county commissioners also comply with M.C.A. sections 7-8-2211 through 7-8-2214 (1987)?

To reflect the foregoing,

*Appropriate orders will be issued.*