T.C. Memo. 2007-103

UNITED STATES TAX COURT

JOHN KARASON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12296-05.               Filed April 26, 2007.

<u>John Timothy Bender</u> and <u>J. Scott Broome</u>, for petitioner.

<u>Mark D. Eblen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined a deficiency in
petitioner's Federal income tax for 2001 of $14,575, as well as
an addition to tax under section 6662(a) of $2,915.[1]

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code, as amended, and Rule references are to
the Tax Court Rules of Practice and Procedure.  Amounts are
(continued...)

The issues for decision are: (1) Whether petitioner is entitled to section 179 expense and section 167 depreciation deductions; (2) whether petitioner has sufficient basis in a partnership entitling him to deduct partnership losses; and (3) whether petitioner is liable for an accuracy-related penalty pursuant to section 6662(a).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Contrary to the petition, which indicated petitioner resided in Elizabethtown, Pennsylvania, when the petition was filed petitioner resided in Lincoln, California.

A. Petitioner's Background

Petitioner graduated from college with a degree in political science and accounting and subsequently pursued a master's degree in taxation and business administration. He did not complete the graduate degrees. While working on his master's in taxation, petitioner was employed as a tax manager for Levin Rosenfeld in Bedminster, New Jersey. A year later, he left Levin Rosenfeld and moved to Ohio to work for Provident Nursing Homes as its assistant controller. In January 1988, he began employment with

---

[1](...continued)
rounded to the nearest dollar.

the Internal Revenue Service (IRS) as a revenue agent in the Mansfield, Ohio, office. While in the Mansfield office, he became an industry specialist in the fields of healthcare, horse operations, and farming operations. In 1999, he was promoted to group manager and later promoted to large case manager. In 2004, petitioner was transferred to an IRS office in San Francisco, California, where he remained until he terminated his position in August 2005. During petitioner's entire employment with the IRS, he either audited or supervised the audits of taxpayers.

B. Dr. Michael Karason

Dr. Michael Karason (Dr. Karason), petitioner's younger brother, is a podiatrist licensed to practice in the States of Ohio, Pennsylvania, and California. At the time of trial, he practiced podiatry out of offices in Harrisburg and Elizabethtown, Pennsylvania.

On December 21, 2000, Dr. Karason executed a "Bill Of Sale And Agreement" (purchase agreement) to purchase the Harrisburg podiatry practice of Dr. Harold A. Flom, D.P.M. (Dr. Flom) for $31,000. The closing date was January 13, 2001. Dr. Flom's podiatry practice consisted of intangible assets, which included patient lists, patients' telephone numbers, and patients' files, and medical equipment, which included furniture, office items, workroom items, and items in two treatment rooms. Each treatment room's items included a podiatry chair, a stool, a sitting chair,

lights, paintings, and a podiatry wall cabinet with supplies. The purchase agreement failed to specifically indicate what the office and workroom items were, or the type of furniture. The purchase agreement did not allocate a fair market value (FMV) to each piece of property included in the intangible assets or medical equipment.

Dr. Karason testified he did not have the funds to purchase Dr. Flom's practice. To finance the transaction, petitioner obtained a $30,000 bank loan from The Farmers Savings Bank (Farmers Bank) on December 22, 2000, and wired it to his brother on January 9, 2001. The loan was secured with rental property owned by Karason Capital Partners (KCP), petitioner's and Dr. Karason's partnership.[2] The promissory note for the loan stated the loan's purpose was for "BUSINESS: PURCHASE MEDICAL PRACTICE". Dr. Karason's solely owned corporation, Karason Podiatric Centers, Inc. (KCPI), paid the monthly bank loan payments to Farmers Bank totaling $16,662 in 2001.

---

[2] For convenience, the Court uses the terms "partnership" and "partner" without deciding whether a partnership existed.

The promissory note stated the loan was secured "WITH OPEN-END MORTGAGE ON REAL ESTATE LOCATED AT 901 CO. RD. 801, ASHLAND, OHIO 44805 CONSISTING OF 9.51 ACRES WITH HOUSE AND BUILDINGS". This property was listed as KCP's rental property on its Forms 8825, Rental Real Estate Income and Expenses of a Partnership or an S corporation, for 1995 through 1997 and 1999 through 2001.

C.   Petitioner's 2001 Federal Income Tax Return

Petitioner's Form 1040, U.S. Individual Income Tax Return, for 2001 (2001 return) reported that he, not Dr. Karason or KCPI, purchased Dr. Flom's medical equipment.  Petitioner's Form 4562, Depreciation and Amortization, reported that he paid $27,000 for the medical equipment, made a section 179 election to expense $24,000 of the equipment's cost, and claimed an additional $600[3] depreciation deduction.  He also reported a depreciation deduction of $994 for other medical equipment purchased prior to Dr. Karason's purchase of the podiatry practice.

Petitioner's Schedule C, Profit or Loss From Business, reported that he leased the medical equipment to KCPI and received $16,662 as gross rents from KCPI, which equaled the amount of KCPI's 2001 loan payments to Farmers Bank.  After deducting a total of $25,594 for section 179 expense and section 167 depreciation deductions and $2,307 interest expense on the Farmers Bank loan, petitioner claimed on the Schedule C a net loss of $11,239.

Petitioner and Dr. Karason did not enter into a written agreement memorializing either the purported sale of the medical equipment to petitioner or the lease of the medical equipment to

---

[3] Petitioner listed $3,000 of the cost of the medical equipment as 5-year property on Part II, MACRS Depreciation for Assets Placed in Service Only During Your 2001 Tax Year, Section B--General Depreciation System, of Form 4562, Depreciation and Amortization.

KCPI. The purchase agreement between Dr. Karason and Dr. Flom did not mention petitioner's name, indicate that the medical equipment was assigned to petitioner, or that petitioner was going to purchase the equipment.

D.  Karason Capital Partners

Petitioner formed KCP in 1989 with members of his family for the purpose of investing in property.[4] Petitioner prepared all of KCP's Federal partnership tax returns. According to the partnership returns, petitioner was a partner from 1989 through 1993 and 1996 through 2001,[5] and Dr. Karason was a partner in KCP from its formation.[6] In 2001, petitioner owned a 70-percent interest in KCP, and Dr. Karason owned the remaining 30 percent.

During 2001, KCP's purported business activities included renting real property and breeding race horses. KCP's Form 1040 Schedule E, Supplemental Income and Loss, for 2001 reported that the rental properties generated a $31,337 loss, and Form 1040 Schedule F, Profit or Loss From Farming, for 2001 reported the horse breeding activities generated a $13,933 loss. KCP's Schedule K-1, Partner's Share of Income, Credits, Deductions,

---

[4] The partnership also went by the names Karason Family Partnership and Karason Family Investment Club.

[5] Petitioner did not own a direct partnership interest in KCP in 1994 and 1995.

[6] From 1990 through 1999, KCP's partners at various times included petitioner's mother, father, and various other entities. Petitioner and Dr. Karason were the only partners in 2001.

etc., for 2001 reported petitioner's distributive share of KCP losses was $31,689.[7]  Petitioner deducted his share of the losses on his 2001 Federal income tax return.  From 1990 through 2003, KCP did not generate a profit.

E.    The Audit

In July 2004, respondent began the audit of petitioner's 2001 return.  Respondent requested documentation from petitioner: (1) Establishing that he owned the medical equipment including purchase invoices, settlement sheets, and receipts; (2) substantiating the medical equipment's FMV and depreciable basis; (3) identifying bank accounts used in his medical equipment rental business including the bank account records; and (4) substantiating his adjusted basis in KCP.

To substantiate his basis in the medical equipment, petitioner provided a handwritten depreciation schedule for the medical equipment titled "Depreciation 2005"[8] with no supporting documentation other than a copy of the promissory note for the loan from Farmers Bank.  Petitioner also provided a Form 1099-MISC, Miscellaneous Income, for 2001 from KCPI indicating it had paid $16,662 to petitioner as rent for its use of the medical equipment in 2001.  This form was not filed with the IRS.

---

[7] Schedule E loss of $31,337 + Schedule F loss of $13,933 ($45,270) x petitioner's 70 percent ownership (.70) = $31,689.

[8] Although the schedule was titled "Depreciation 2005", it listed the medical equipment depreciation deduction amounts from 2001 through 2006.

To substantiate his basis in KCP, petitioner provided his personal bank account statements from the Auto Workers Credit Union and a handwritten statement, without supporting documentation, stating his adjusted basis in KCP in 2001 was $221,194, calculated as follows:

| Item | Amount |
| --- | --- |
| JCK (K-1) share of recourse liabilities | $ 70,000 |
| Petitioner's beginning capital account | 159,746 |
| 2001 cash contributions | 23,000 |
| 2001 income/loss per K-1 for JCK share (net) | [1](31,552) |
| Ending capital account | 221,194 |

[1] Petitioner reduced the $31,689 loss reported on KCP's Schedule K-1 for 2001 to reflect his receipt of $137 of ordinary dividend income ($31,689 – $137 = $31,552).

Respondent determined that petitioner failed to establish his cost basis in the medical equipment and failed to provide supporting information to substantiate his basis in KCP. On June 29, 2005, respondent mailed petitioner a notice of deficiency disallowing his section 179 expense and section 167 depreciation deductions of $25,594, and his share of KCP's losses of $31,689.

F. Tax Court Proceedings

Petitioner timely filed his petition on July 5, 2005. On January 6, 2006, respondent served on petitioner a request for production of documents. The documentation requested included

accounting books, records, invoices, and bank records related to the medical equipment business, documentation related to the purchase of the medical equipment, depreciation schedules for the medical equipment, canceled checks verifying petitioner's initial investment and additional capital contributions to KCP, loan agreements relating to KCP, and books and records of KCP used to compute petitioner's basis in KCP. Petitioner did not provide the requested documents.

On February 10, 2006, respondent filed a motion seeking an order to compel production of documents. On February 23, 2006, the Court ordered petitioner to "on or before March 10, 2006, produce to counsel for respondent, for inspection and copying, each and every document requested in respondent's request for production of documents".

In response, to substantiate his basis in KCP, petitioner produced a one-page typed statement of his KCP capital account titled "Karason Family Investment Club Capital Account - JCK". The typed statement contradicted the handwritten statement petitioner had provided during the audit. The typed statement indicated that he had a 2001 capital balance of $81,806 and contributed $18,500 to KCP in 2001. The typed statement also indicated he made capital contributions every year from 1986 through 2001 and incurred $31,552 of partnership losses in 2001. No supporting documentation was provided to substantiate these

amounts.  Petitioner also produced 2001 personal bank account statements for an account with Auto Worker's Credit Union in the name of his mother, Marie J. Vignovich, and on which petitioner had signatory authority.  Petitioner did not provide any documentation with respect to the medical equipment.

OPINION

I.  Medical Equipment

Petitioner contends he purchased the medical equipment from Dr. Karason in 2001 and leased it back to KCPI in 2001 along with other medical equipment as part of his medical equipment rental business.  Thus, he asserts he is entitled to expense $24,000 of the cost of the medical equipment purchased in 2001 pursuant to section 179 and depreciate the remaining amount pursuant to section 167, and that he is entitled to section 167 depreciation deductions for previously purchased medical equipment.

Section 179 allows a taxpayer to elect to treat the cost of section 179 property as a current expense in the year such property is placed in service, within certain dollar limitations. Sec. 179(a) and (b).  To substantiate this expense, the taxpayer must maintain records which specifically identify each item of section 179 property and reflect how and from whom such property was acquired and when such property was placed in service.  See sec. 1.179-5(a), Income Tax Regs.  Section 179 property is defined as property acquired by purchase for use in the active

conduct of a trade or business.  Sec. 179(d)(1).  The term "purchase" means generally "any acquisition of property".  Sec. 179(d)(2); sec. 1.179-4(c), Income Tax Regs.  Property is deemed acquired when reduced to physical possession, or control. Baicker v. Commissioner, 93 T.C. 316, 322 (1989); secs. 1.48-2(a)(2)(b)(6), 1.167(c)-(1)(a)(2), Income Tax Regs.

Section 167 allows a depreciation deduction for the exhaustion, and wear and tear of property used in the trade or business or held for the production of income.  Depreciation is not necessarily predicated upon ownership of the property but rather upon an investment in property.[9]  Arevalo v. Commissioner, 124 T.C. 244, 251-252 (2005), affd. 469 F.3d 436 (5th Cir. 2006); Gladding Dry Goods Co. v. Commissioner, 2 B.T.A. 336, 338 (1925); Stiebling v. Commissioner, T.C. Memo. 1994-233, affd. without published opinion 113 F.3d 1242 (9th Cir. 1997).  The taxpayer bears the burden of proving the Commissioner's determinations are incorrect.[10]  See Rule 142(a).

---

[9] "The important question is * * * who made the investment of the capital which is to be recovered over the period of the exhaustion of the property.  The one who made the investment is entitled to its return."  Gladding Dry Goods Co. v. Commissioner, 2 B.T.A. 336, 338 (1925).

[10] The burden of proof may shift to the Commissioner under sec. 7491(a) if the taxpayer has produced credible evidence with respect to a factual issue relating to the tax liability at issue, has met substantiation requirements, maintained records, and cooperated with the Secretary's reasonable requests for documents, witnesses, and meetings.

(continued...)

Respondent contends petitioner is not entitled to a section 167 depreciation deduction or a section 179 expense deduction because he did not prove he invested in or purchased the equipment that he purportedly used in his medical equipment rental business.

Petitioner and Dr. Karason testified that, pursuant to an oral agreement, Dr. Karason assigned the medical equipment to petitioner, and petitioner invested in and purchased the equipment when he wired the bank loan funds to Dr. Karason on January 9, 2001. They also testified that the FMV of the medical equipment was determined pursuant to consultations with Gill Podiatry and Moore Medical, purveyors of podiatry equipment. Outside of the handwritten depreciation schedule, petitioner did not produce documentation supporting either the cost or the FMV of the medical equipment or that these consultations actually occurred. Petitioner also testified that he did not obtain insurance covering the medical equipment.

Petitioner and Dr. Karason testified that immediately after petitioner purchased the medical equipment, pursuant to an oral

---

[10](...continued)

In this case, petitioner bears the burden of proof because he did not: (1) Introduce credible evidence with respect to any factual issue relevant to ascertaining his liability; (2) substantiate his expenses; (3) maintain the required records; and (4) cooperate with respondent's requests. Sec. 7491(a); see Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

lease agreement, petitioner leased it, along with other medical equipment, to KCPI, and as rent KCPI paid the bank loan payments attributable to the purchase of the podiatry practice. Petitioner testified that in years subsequent to 2001, KCPI's rent increased, but he produced no documentary evidence to support this testimony.

The facts as presented support respondent's argument that petitioner did not invest in or purchase the medical equipment. First, the Purchase Agreement between Dr. Karason and Dr. Flom did not mention petitioner's name, indicate that the medical equipment was assigned to petitioner, or state that petitioner was going to purchase the equipment. Second, Dr. Karason testified that if not for the funds provided by petitioner, he could not have paid the purchase price for the podiatry practice. Third, the loan was secured with KCP's property (Petitioner's and Dr. Karason's partnership). Fourth, the promissory note on the loan stated the loan was for the purpose of "BUSINESS: BUSINESS, PURCHASE MEDICAL PRACTICE". Fifth, Dr. Karason's professional corporation, KCPI, paid the monthly loan payments to the bank, not petitioner.

Petitioner testified that his and Dr. Karason's attorney and accountant advised them that they did not need to enter into a written agreement to either assign and purchase the medical equipment or to lease the equipment to KCPI because petitioner

and Dr. Karason were brothers. The Court finds this difficult to believe. Petitioner was employed by the IRS for more than 17 years either auditing or supervising the audits of taxpayers. He should have known to document the purported purchase of the medical equipment, the lease agreement with KCPI, and the medical equipment's cost and FMV.

Petitioner did not produce any documentation showing either he invested in or purchased the medical equipment. For the foregoing reasons, the Court concludes petitioner is not entitled to deduct the costs of the medical equipment under sections 179 and 167.[11]

## II. Karason Capital Partners

Petitioner contends he had a sufficient basis in KCP to allow him to deduct $31,689 as passthrough losses from KCP in 2001.

Respondent contends petitioner failed to substantiate his purported adjusted basis in KCP, and he cannot deduct the $31,689 of passthrough losses from KCP.

Section 704(d) limits the deduction of a partner's distributive share of partnership loss to the partner's adjusted basis in the partnership at the end of the partnership year. Sec. 1.704-1(d)(1), Income Tax Regs. The partner's adjusted

---

[11] Because this Court found that petitioner did not invest in or purchase the equipment, Dr. Karason's bank loan payments of $16,662 did not constitute income to petitioner.

basis in the partnership interest reflects, inter alia, the adjusted basis in any property the partner has contributed to the partnership.  Secs. 705(a), 722.  Section 6001 requires taxpayers to maintain adequate records from which their correct tax liability may be determined.  Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989).

The only documentation petitioner provided to substantiate his basis in KCP was the handwritten statement, a typed statement which contradicted the handwritten statement, and his and his mother's bank statements.  The handwritten statement indicated his adjusted basis in KCP in 2001 was $221,194.  On brief, petitioner argued that even though the handwritten statement was accurate, his 2001 adjusted basis in KCP was actually $184,486, comprising $70,000 of recourse liabilities, $19,628 of 2001 cash contributions, and a $81,806 capital account.

Although respondent repeatedly requested documentation and the Court ordered petitioner to comply with respondent's requests, petitioner did not provide any documentation or testimony substantiating the $70,000 of recourse liabilities.  This Court finds petitioner failed to prove he had recourse liabilities of $70,000.

In an attempt to substantiate the 2001 cash contributions to KCP of $19,628, petitioner produced copies of his mother's 2001 Auto Workers Credit Union account statements, which listed him as

a joint member, and produced copies of his 2001 Auto Workers Credit Union account statements, which listed his mother as a joint member. Petitioner testified that the account in his mother's name was actually the KCP business account. The account did not contain a taxpayer identification number for KCP, even though, as admitted on cross-examination, he was aware that KCP was required to put its taxpayer identification number on its bank account. He explained that the account was in his mother's name because an individual was allowed to open only one account, and the credit union did not allow business entities to have an account.

Petitioner testified, and the account statements showed, that he deposited money from his personal account to his mother's account. He testified that the money was transferred to fund KCP. However, he did not provide any checks or other documentation showing that his mother's account was a business account or that the withdrawals from his mother's account were for KCP expenses. Petitioner testified that he lived with and supported his mother, claimed his mother as a dependent in 2001, and claimed a standard deduction as head of household for 2001. The facts indicate the transfer of money from petitioner's account to his mother's account was to provide funds for his mother, whom he supported. For the foregoing reasons, this Court

finds petitioner failed to prove he contributed $19,628 to KCP in 2001.

To substantiate his purported 2001 capital account of $81,806, petitioner produced a typed statement listing his capital contributions. The statement contradicted KCP's returns and the stipulated facts by claiming petitioner made capital contributions to KCP in: (1) 1986 through 1998, years before KCP was formed; and (2) 1994 and 1995, years when petitioner was not a direct partner of KCP.

Dr. Karason, a 30-percent owner of KCP since 1989, testified that he knew nothing about KCP or its operations. He also admitted he did not know when KCP was formed, when he became a partner, how he acquired an interest, how much money, if any, he contributed, whether KCP had a bank account, and whether KCP had ever distributed stocks, bonds, or real estate to him. To this extent, the Court believes Dr. Karason's testimony.

Petitioner admitted that respondent repeatedly requested documentation from him and his attorney to support his purported basis in KCP, and he was aware it was his responsibility to prove such basis. He offered only his self-serving testimony, and he failed to produce any documentation to substantiate his adjusted basis in KCP. For the foregoing reasons, this Court finds petitioner is not entitled to deduct $31,689 as passthrough losses from KCP in 2001.

III. <u>Section 6662</u>

Section 6662(a) imposes a 20-percent accuracy-related penalty on the portion of any underpayment attributable to negligence or disregard of rules or regulations. Sec. 6662(b). The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure by the taxpayer to keep adequate books and records or to properly substantiate items. Sec. 6662(c); sec. 1.6662-3(b), Income Tax Regs. Section 7491(c) provides that the Commissioner bears the burden of production with respect to accuracy-related penalties. See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001).

Petitioner reported expenses and deductions for medical equipment without any documentation to show he purchased or invested in the equipment. Additionally, petitioner reported his share of KCP's losses without providing documentation to substantiate his purported basis in KCP.

Petitioner was an employee of the IRS for more than 17 years and spent the majority of this time either auditing or supervising the audits of taxpayers. He testified he was well aware of his responsibility to provide documentation to substantiate his expenses, deductions, and partnership basis, but he failed to do so even after the Court ordered him to comply with respondent's request for production. Respondent has met the

burden of production, and petitioner, having failed to show reasonable cause, substantial authority, or other basis for reducing the underpayment on which the penalty is imposed, is liable for the section 6662 penalty for 2001.

The Court, in reaching its holding, has considered all arguments made and concludes that any arguments not mentioned above are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.