# United States Tax Court

T.C. Memo. 2022-87

JAROSLAW SEK AND DANUTA PETROW-SEK,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 7722-18.                          Filed August 29, 2022.

————

Jaroslaw Sek and Danuta Petrow-Sek, pro sese.

*Brian E. Peterson* and *Peggy Gartenbaum*, for respondent.

## MEMORANDUM OPINION

GALE, *Judge*: Respondent issued a notice of deficiency with respect to petitioners' 2016 taxable year in which he determined that petitioners were liable for a deficiency of $14,860 and an accuracy-related penalty under section 6662(a)[1] of $2,972. Petitioners timely petitioned, and now before us is respondent's Motion for Summary Judgment, which relies on stipulations of fact the parties have entered into. Petitioners oppose the Motion. For the reasons that follow, we will grant respondent's Motion.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]                                     *Background*

Petitioners resided in New York when they filed their Petition.

After his employment was terminated in 2015, petitioner Jaroslaw Sek purchased "COBRA" continuation health insurance coverage through his former employer in order to maintain health insurance for himself, his wife, and their two children. The framework for COBRA coverage was established by the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, §§ 10001 and 10002, 100 Stat. 82, 222, 227 (1986) (codified as amended in scattered sections of 26, 29, and 42 U.S.C.), which required certain employers offering group health plans to allow employees who experienced specified qualifying events, including employment termination, to elect to purchase up to 18 months (or in some cases up to 36 months) of "continuation coverage" equivalent to the group health plan coverage that would have been available to them in the absence of a qualifying event. The COBRA framework in effect during 2015 and 2016 set forth similar requirements relating to continuation coverage. *See* § 4980B(f); 29 U.S.C. §§ 1161–1163.

Petitioners maintained their COBRA coverage from shortly after Mr. Sek's termination in 2015 through August 2016. From January 2016 through August 2016 the monthly premiums were $1,827.99, totaling $14,623.92 for those eight months of coverage.[2] From September 2016 through the end of that year, petitioners purchased health insurance coverage for themselves and their children through what the parties refer to as the New York State Health Exchange[3] (New

---

[2] The COBRA premiums for January and February 2016 were slightly lower and slightly higher, respectively. However, the total that petitioners paid for those two months of coverage was $3,655.98, equivalent to two times the $1,827.99 premium they paid for each of their other months of COBRA coverage in 2016.

[3] Pursuant to Rule 201 of the Federal Rules of Evidence, we take judicial notice that New York has established a health benefit exchange under the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, § 1311, 124 Stat. 119, 173–81 (2010) (codified at 42 U.S.C. § 18031), which is currently called NY State of Health and previously was called the New York Health Benefit Exchange. *See History and Development*, NY State of Health, https://info.nystateofhealth.ny.gov/history-and-development (last visited Aug. 1, 2022). Although the parties do not refer to this exchange in the Stipulation of Facts by either of its official names, respondent does state in his Motion (after explaining the meaning of the term "Exchange" in the context of the ACA) that "[o]nce COBRA benefits were exhausted, petitioners obtained insurance through the Exchange via NY State of Health." For that factual point,

[*3] York Exchange) at monthly premiums of $1,468.12, totaling $5,872.48 for those four months of coverage. The parties have stipulated that petitioners paid the monthly premium for each of the four months of coverage that they obtained through the New York Exchange and that petitioners did not enroll in coverage through any "Health Insurance Exchange" before September 2016.

Petitioners timely filed a joint federal income tax return for 2016. On line 73 of that return, petitioners claimed a health coverage tax credit (HCTC) under section 35 of $14,860, as calculated on Form 8885, Health Coverage Tax Credit, attached to the return. Petitioners did not claim a premium assistance tax credit (PTC) under section 36B in the space provided for that purpose on line 69 of the return. Petitioners did, however, attach to their return Form 8962, Premium Tax Credit (PTC), which indicated that the amount of the PTC petitioners could claim for 2016 was zero.

Following an examination of their return, respondent issued the notice of deficiency to petitioners in which he disallowed their claim for the HCTC and determined a deficiency equal to the amount of the disallowed credit. The notice of deficiency indicated that petitioners could establish their eligibility for the HCTC by submitting evidence that they had received certain types of Trade Adjustment Assistance (TAA) benefits or Pension Benefit Guaranty Corporation (PBGC) benefits, or that either of them was a family member of a recipient of such benefits who had died or with whom either petitioner had finalized a divorce. Petitioners have since stipulated that neither of them received any form of TAA benefits or PBGC benefits for 2016 and that neither of them was a qualifying family member of a deceased individual who received such benefits.[4]

After respondent issued the notice of deficiency, petitioners submitted to respondent an amended return for 2016. On the amended

---

respondent cites several paragraphs in the parties' Stipulation of Facts, including one paragraph that uses the name "New York State Health Exchange." Respondent accordingly concedes that the exchange identified in the Stipulation of Facts is the one that New York established under the ACA.

[4] The record does not reveal whether either petitioner was a party to a finalized divorce from a recipient of TAA or PBGC benefits. However, as discussed below, petitioners have not raised any genuine factual dispute concerning respondent's determination that they were ineligible to claim the HCTC. In particular, petitioners do not contend that either of them bore a relationship to an HCTC-eligible taxpayer that could have resulted in either petitioner's being treated as eligible for the HCTC.

[*4] return, petitioners stated that they had "incorrectly claimed" the PTC on line 73 of the original return and Form 8885 instead of on line 69 and Form 8962. Petitioners attached to the amended return a revised Form 8962 indicating that they were entitled to claim a total PTC of $12,856, based on the premiums they paid for COBRA coverage from January through August 2016 and the premiums they paid for coverage obtained through the New York Exchange from September through December 2016. About one month after submitting their amended return, petitioners filed their Petition for redetermination. In the Petition, they sought a determination that their claim for the PTC, as revised, was correct.

The parties have stipulated the following matters relevant to petitioners' claim for the PTC for the year at issue: (1) petitioners' household income was 319% of the federal poverty line for their family size; (2) the monthly premium for the second lowest cost silver plan for petitioners' family size that was available on the New York Exchange was $1,049.90; (3) petitioners' monthly contribution amount for PTC purposes was $624; and (4) no advance payments of the PTC were made for the coverage that petitioners obtained through the New York Exchange.

As noted, respondent now seeks summary adjudication of the issues in this case. In his Motion, respondent maintains his position that petitioners are not entitled to claim the HCTC for 2016, and he contends that petitioners have conceded that issue. Respondent further contends that petitioners are not entitled to claim the PTC for the first eight months of 2016, when they had COBRA coverage. Respondent concedes, however, that petitioners are entitled to claim a PTC of $1,704 for the last four months of 2016, when they obtained a qualified health plan through the New York Exchange. As a consequence of that concession, respondent also concedes that the amount of the deficiency he originally determined should be reduced by $1,704, to $13,156. In addition, respondent concedes that petitioners are not liable for the accuracy-related penalty under section 6662(a).

*Discussion*

Summary judgment "is intended to expedite litigation and avoid unnecessary and expensive trials." *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). Summary judgment may be granted where there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b). The moving party

**[*5]** bears the burden of proving that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party. *Craig v. Commissioner*, 119 T.C. 252, 260 (2002); *Dahlstrom v. Commissioner*, 85 T.C. 812, 821 (1985). The party opposing summary judgment must set forth specific facts showing that a genuine question of material fact exists and may not rely merely on allegations or denials in the pleadings. Rule 121(d); *Grant Creek Water Works, Ltd. v. Commissioner*, 91 T.C. 322, 325 (1988). Because the parties have stipulated the material facts, we may proceed to decide the questions of law raised by respondent's Motion.

I.    *HCTC*

We agree with respondent, and petitioners do not dispute, that petitioners have conceded that they are ineligible to claim the HCTC for 2016. In particular, petitioners did not assign error in their Petition to respondent's disallowance of the HCTC. Petitioners are accordingly deemed to have conceded that issue under Rule 34(b)(4).

Alternatively, even if petitioners had not conceded their claim for the HCTC, we would sustain respondent's disallowance of that claim. The HCTC allowed under section 35 is "an amount equal to 72.5 percent of the amount paid by the taxpayer for coverage of the taxpayer and qualifying family members under qualified health insurance for eligible coverage months beginning in the taxable year." § 35(a). A month is an eligible coverage month only if, among other requirements, the taxpayer "is an eligible individual." § 35(b)(1)(A)(i). To be an eligible individual for HCTC purposes, a taxpayer generally must receive certain benefits under the Trade Act of 1974 or from the PBGC. § 35(c). A spouse or other qualified relative of an eligible individual may also be treated as an eligible individual during a 24-month period following the occurrence of certain events, including the death of the eligible individual or the finalization of a divorce from the eligible individual. *See* § 35(g)(10).

Petitioners have stipulated that neither of them received any of the types of benefits during 2016 that would have made them eligible individuals for HCTC purposes. Petitioners have also stipulated that neither of them was a family member of a deceased eligible individual, and they have not otherwise raised any factual dispute suggesting a possibility that either of them could be treated as an eligible individual for purposes of the HCTC for 2016. Petitioners accordingly were not eligible to claim the HCTC for any month of 2016, and respondent

**[\*6]** correctly disallowed the full amount of that credit in the notice of deficiency.

## II.    *PTC*

Petitioners contend in their Petition that after respondent disallowed their claim for the HCTC, they properly revised their claim for a credit and have now correctly claimed the PTC instead. Petitioners' revised claim is that they are entitled to the PTC for every month of 2016, for a total PTC of $12,856. We agree with respondent, however, that petitioners may not claim the PTC for January through August 2016, when they and their children were enrolled in COBRA coverage, but may do so for September through December 2016, when they were enrolled in health coverage through the New York Exchange. Consequently, we agree with respondent that the total PTC allowed to petitioners for the year at issue is $1,704.

### A.    *Eligibility for Credit*

To be eligible for the PTC, a taxpayer must be an "applicable taxpayer." § 36B(a). In general, an applicable taxpayer is a taxpayer whose household income for the taxable year is between 100% and 400% of the federal poverty line, based on family size. § 36B(c)(1)(A). Additionally, a taxpayer who is married at the close of the taxable year must file a joint return with his or her spouse in order to be treated as an applicable taxpayer. § 36B(c)(1)(C). Petitioners filed a joint return for the year at issue, and the parties have stipulated that petitioners' household income was 319% of the federal poverty line for their family size. Petitioners were accordingly applicable taxpayers for purposes of the PTC for 2016.

For an applicable taxpayer, the allowed amount of the PTC is "equal to the premium assistance credit amount of the taxpayer for the taxable year," which is determined by first calculating the "premium assistance amount" for each "coverage month," and then calculating the sum of all premium assistance amounts for the taxable year. § 36B(a) and (b). A month is a coverage month only if, as of the first day of the month, the taxpayer, his or her spouse, or at least one of his or her dependents was "covered by a qualified health plan . . . that was enrolled in through an Exchange established by the State under section 1311 of the [ACA]," and the premium for the plan was paid either by the taxpayer or through an advance payment mechanism established by statute. § 36B(c)(2)(A). However, a month cannot be a coverage month

[*7] with respect to any individual who was "for such month . . . eligible for minimum essential coverage other than eligibility for coverage described in section 5000A(f)(1)(C) (relating to coverage in the individual market)." § 36B(c)(2)(B)(i).

For two reasons, the months for which petitioners obtained COBRA coverage do not qualify as coverage months, and thus cannot be included in the calculation of petitioners' PTC for the year at issue. But the months for which petitioners obtained coverage through the New York Exchange do qualify as coverage months, and those months may be included in the calculation of petitioners' PTC.

The first reason that the months for which petitioners obtained COBRA coverage are not coverage months is that petitioners have stipulated that they enrolled in that coverage through Mr. Sek's former employer, rather than through an exchange established under the ACA. Because petitioners did not enroll in their COBRA coverage through an exchange established under the ACA as required under section 36B(c)(2)(A), the months for which they had COBRA coverage cannot be coverage months.

The second reason is that under Treasury Regulation § 1.36B-2(c)(3)(iv), petitioners and their children are treated as eligible for employer-sponsored minimum essential coverage (i.e., minimum essential coverage other than coverage in the individual market) during the months for which they were enrolled in COBRA coverage. Those months accordingly cannot be coverage months under section 36B(c)(2)(B)(i).

For purposes of the PTC, the term "minimum essential coverage" is defined by reference to section 5000A(f). § 36B(c)(2)(B)(ii). Under section 5000A(f), minimum essential coverage includes not only a plan available in the individual market (such as a qualified plan offered by an exchange established under the ACA), *see* § 5000A(f)(1)(C); Treas. Reg. § 1.5000A-2(d), but also, inter alia, coverage under an "eligible employer-sponsored plan," § 5000A(f)(1)(B). In general, an eligible employer-sponsored plan is "a group health plan or group health insurance coverage offered by an employer to [an] employee," § 5000A(f)(2); *see also* Treas. Reg. § 1.5000A-2(c)(1), including a former employee, *see* Treas. Reg. § 1.5000A-1(d)(2).

Rules for determining whether an individual is eligible for minimum essential coverage under an eligible employer-sponsored plan

[*8] are set forth in Treasury Regulation § 1.36B-2(c)(3), captioned "Employer-sponsored minimum essential coverage." In particular, Treasury Regulation § 1.36B-2(c)(3)(iv) provides that a former employee, or an individual related to a former employee, "who may enroll in eligible employer-sponsored coverage or in continuation coverage required under Federal law" is deemed "eligible for minimum essential coverage under this coverage only for months that the former employee or related individual is enrolled in the coverage." *See also* Treas. Reg. § 1.5000A-3(e)(3)(i)(C) (providing, for purposes of determining whether an individual is eligible for affordable employer-sponsored coverage, that "[a] former employee or an individual related to a former employee, who may enroll in continuation coverage required under Federal law . . . is eligible for coverage under an eligible employer-sponsored plan only if the individual enrolls in the coverage").

As we have discussed, COBRA coverage is continuation coverage required under federal law with respect to group health plans offered by certain employers to their employees. Petitioners and their children are accordingly deemed eligible for minimum essential coverage under the applicable regulations for the months during which they enrolled in COBRA coverage. Furthermore, because the applicable regulations treat coverage offered by employers to former employees, including continuation coverage, as coverage under an eligible employer-sponsored plan, such coverage is minimum essential coverage described in section 5000A(f)(1)(B) (and such coverage is thus minimum essential coverage other than coverage in the individual market described in section 5000A(f)(1)(C)). The months for which petitioners obtained COBRA coverage therefore are not coverage months under section 36B(c)(2)(B)(i).

Because the months for which petitioners obtained COBRA coverage are not coverage months under section 36B(c)(2)(A) and (B), those months cannot be included in petitioners' PTC calculation for the year at issue. *See* § 36B(a) and (b). Petitioners therefore may not, as a matter of law, claim the PTC for January through August 2016.

Petitioners may, however, claim the PTC for the final four months of 2016. Respondent concedes petitioners no longer had COBRA coverage during those months and that they instead enrolled in a qualified health plan through the New York Exchange. The parties have stipulated that petitioners paid the monthly premium for each of those four months of coverage. Under section 36B(c)(2)(A), September

[*9] through December 2016 are therefore coverage months that may be included in the calculation of petitioners' PTC for the year at issue.

B. *Calculation of Credit*

To calculate the PTC for petitioners' four coverage months, we must determine the premium assistance amount for each of September, October, November, and December 2016. The sum of those premium assistance amounts is the total allowable credit. *See* § 36B(a) and (b). In cases where some portion of the otherwise allowable amount of the credit has been paid in advance as authorized under the ACA, the allowable amount of the credit is reduced (but not below zero) by the amount of any advance payments. *See* § 36B(f)(1). Any advance payments in excess of the total allowable credit generally result in a corresponding increase in the income tax due for the taxable year. *See* § 36B(f)(2).

The premium assistance amount for a coverage month is the lesser of either (1) "the monthly premiums for such month for 1 or more qualified health plans offered in the individual market within a State" which "were enrolled in through an Exchange established by the State under [section] 1311 of the [ACA]" and which cover the taxpayer, his or her spouse, or any of his or her dependents, § 36B(b)(2)(A), or (2) the amount by which the "adjusted monthly premium for such month for the applicable second lowest cost silver plan" exceeds "1/12 of the product of the applicable percentage and the taxpayer's household income for the taxable year," § 36B(b)(2)(B). The figure described in section 36B(b)(2)(B) as "1/12 of the product of the applicable percentage and the taxpayer's household income for the taxable year" is also referred to as the taxpayer's "contribution amount." Treas. Reg. § 1.36B-3(d)(1)(ii).

For purposes of the first calculation method, the parties agree that petitioners paid a monthly premium of $1,468.12 for the coverage they obtained through the New York Exchange for each of the last four months of 2016. On the basis of those payments, the premium assistance amount for each month would be $1,468.12, and the total PTC under the first method would be four times that amount, or $5,872.48.

For purposes of the second calculation method, the parties agree that the applicable second lowest cost silver plan was available on the New York Exchange during 2016 for a monthly premium of

**[\*10]** $1,049.90.[5] The parties further agree that petitioners' monthly contribution amount for 2016 was $624. The $1,049.90 monthly premium for the applicable second lowest cost silver plan exceeds petitioners' $624 monthly contribution amount by $425.90.

Because $425.90 is less than the $1,468.12 that petitioners actually paid as a monthly premium, $425.90 is the premium assistance amount for each of the last four months of 2016. The total of those four months of premium assistance amounts is $1,703.60. The parties have stipulated that no advance payments of the PTC were made with respect to the coverage that petitioners obtained through the New York Exchange, so no further adjustment of the credit amount is required. Petitioners are thus entitled to a total PTC of $1,704 for 2016, as respondent concedes in his Motion. As a consequence of that concession, respondent further concedes that petitioners are entitled to a corresponding reduction in the amount of the deficiency he previously determined for the year at issue, resulting in a corrected deficiency of $13,156.

### C. *Petitioners' Arguments*

In opposition to summary judgment, petitioners contend that they should be permitted to claim the PTC for the months for which they obtained COBRA coverage, either because obtaining COBRA coverage satisfies the provisions of section 5000A mandating that individuals maintain minimum essential health insurance coverage, or because COBRA coverage is not specifically excluded from eligibility for the PTC by regulation. Alternatively, we understand petitioners to contend that the Court should hold on equitable grounds that they may claim the PTC with respect to the months for which they obtained COBRA coverage. We disagree with petitioners as to each point.

The PTC and the section 5000A "individual mandate" to which petitioners refer are two of the mechanisms that Congress enacted as part of the ACA in an effort to improve healthcare access for individuals. *See McGuire v. Commissioner*, 149 T.C. 254, 258 (2017). At the time of the events relevant to this case, the individual mandate was enforced through a tax penalty (also called a "shared responsibility payment") imposed under section 5000A(b)(1) against taxpayers who failed to

---

[5] In the absence of any contrary indication in the parties' stipulations and motion papers, we assume that $1,049.90 is also the adjusted monthly premium for that plan.

**[*11]** maintain minimum essential coverage. *See McGuire*, 149 T.C. at 258; *Millen v. Commissioner*, T.C. Memo. 2019-60, at *4 & n.2, *aff'd per order*, 124 A.F.T.R.2d 2019-6733 (6th Cir. 2019); *see also* Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, § 11081, 131 Stat. 2054, 2092 (amending section 5000A such that taxpayers are generally not liable for the shared responsibility payment for months beginning after December 31, 2018).

As we have explained, Congress specifically provided by statute that months for which a taxpayer is eligible for minimum essential coverage, other than coverage in the individual market identified in section 5000A(f)(1)(C), are excluded from the calculation of the taxpayer's PTC for a taxable year. We accordingly cannot accept petitioners' argument that obtaining coverage that qualifies as minimum essential coverage, and thus satisfies the individual mandate, is sufficient to allow a taxpayer to claim the PTC. As we have also explained, a former employee and his or her relatives are deemed eligible by regulation for employer-sponsored minimum essential coverage for months during which they enroll in continuation coverage, such as COBRA coverage, that an employer is required to offer under federal law. We therefore do not agree with petitioners' contention that no regulation specifically excludes COBRA coverage from eligibility for the PTC.

Petitioners alternatively raise several points that we understand to constitute an argument that, under the circumstances of this case, the Court should hold on equitable grounds that petitioners may claim the PTC with respect to the months for which they obtained COBRA coverage. The points underlying that argument are as follows: (1) a claim that the Internal Revenue Service (IRS) did not provide adequate administrative guidance, such as regulations or instructions, to permit petitioners to properly evaluate their insurance options when they enrolled in COBRA coverage; (2) an observation that the IRS may in some circumstances recharacterize items reported by a taxpayer; (3) a claim that, following a separate audit concerning the 2015 taxable year, IRS representatives allowed petitioners to claim the PTC for COBRA coverage obtained during that year and "assured" petitioners of the correctness of their position; (4) an argument that petitioners' COBRA coverage should be treated the same as the coverage they obtained through the New York Exchange because the premiums were nearly identical and both types of coverage accomplish the ACA's goal of expanding the portion of the population covered by health insurance; (5) a claim that a health care adviser at an unidentified unemployment

**[\*12]** office erroneously advised petitioners to enroll in COBRA coverage before obtaining coverage through the New York Exchange; and (6) the possibility that sustaining respondent's position would cause petitioners to experience undue financial stress.

Although we sympathize with petitioners' situation, we are not free to fashion an equitable remedy to minimize the effects of any questionable advice that petitioners may have received[6] or to alleviate any hardship that petitioners may experience as a result of the application of the complex rules governing the PTC to the facts of this case.[7] *See, e.g., Johnson v. Commissioner*, 152 T.C. 121, 128–29 (2019); *McGuire*, 149 T.C. at 262; *Blas v. Commissioner*, T.C. Memo. 2019-152, at \*10. We must instead apply the law as it is written. As we have explained, the law does not permit petitioners to claim the PTC with respect to the months for which they were enrolled in COBRA coverage.

III. *Conclusion*

Because the parties have stipulated the material facts, we conclude that summary adjudication of the issues in this case is appropriate. We further conclude that, in view of respondent's concessions that petitioners are entitled to the PTC for the final four months of 2016 and that petitioners are not liable for an accuracy-related penalty under section 6662(a), respondent is otherwise entitled to judgment as a matter of law. We will accordingly grant respondent's Motion. We expect, however, that respondent's counsel will include information about alternative payment arrangements in any

---

[6] We note in particular that any concession respondent might have made with respect to the 2015 taxable year, which is not before the Court in this case, would not affect our redetermination of the deficiency for petitioners' 2016 taxable year. Although the doctrine of equitable estoppel can in rare cases bar the Commissioner from asserting inconsistent positions against a taxpayer, it must be applied against the Commissioner "with utmost caution and restraint." *E.g., Wilkins v. Commissioner*, 120 T.C. 109, 112 (2003); *Estate of Emerson v. Commissioner*, 67 T.C. 612, 617 (1977). An error in an opinion or in a statement of law (such as the assurance that petitioners contend they received during a previous audit) is insufficient to establish an estoppel. *See Wilkins*, 120 T.C. at 112–13; *Estate of Emerson*, 67 T.C. at 617–18.

[7] We observe that the various factual allegations underlying petitioners' request for an equitable remedy are generally unsupported by affidavits, declarations, or other materials that the Court may consider in resolving a motion for summary judgment. *See* Rule 121(b), (d). But even if we assume, in petitioners' favor, the truth of their unsupported factual allegations, those allegations are immaterial because we have no authority to grant petitioners an equitable remedy in this case.

**[*13]** subsequent communications with petitioners concerning the deficiency at issue in this case.

To reflect the foregoing,

*An appropriate order and decision will be entered.*